**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **SHAWN MILLER**, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 09-1642 |
| | ) | |
| v. | ) | Chief Magistrate Judge Lenihan |
| | ) | |
| **CORY HARCHA; LEE MYERS;** | ) | |
| and **JORDAN SEESE,** | ) | |
| | ) | Re:  ECF No. 52 |
| Defendants. | ) | |

## <u>MEMORANDUM OPINION</u>

Presently before the Court is the Motion for Summary Judgment filed by Defendants,

Officers Corey Harcha ("Harcha"), Lee Myers ("Myers"), and Jordan Seese ("Seese")

(collectively "Defendants").  For the reasons that follow, Defendants' motion will be granted.


<u>BACKGROUND</u>

Plaintiff, Shawn Miller ("Plaintiff" or "Miller"), is an inmate at the Allegheny County

Jail.  He initiated this civil action on December 15, 2009, by filing a pro se Complaint (ECF No.

3) pursuant to 42 U.S.C. § 1983 complaining of, inter alia, the use of excessive force by

Defendants.  On May 5, 2011, this Court issued a Memorandum Opinion and Order, (ECF Nos.

38 & 39) granting Defendants' Motion to Dismiss Plaintiff's Eighth Amendment and Fifth

Amendment claims, and offering Plaintiff an opportunity to amend his Complaint in order to

state a Fourth Amendment excessive force claim.

Thereafter, Plaintiff filed an Amended Complaint (ECF No. 42) on June 20, 2011.  In the

Amended Complaint, Plaintiff attempts to state a claim for excessive force pursuant to the Fourth

Amendment.  Plaintiff also attempts to make out a claim[1] for the following: 1) First Amendment retaliation as a result of Defendants' filing criminal charges against him[2]; 2) Fourteenth Amendment taking without just compensation for the taking of his vehicle; 3) a Fourth Amendment claim for the seizure of his vehicle; and 4) an Eighth Amendment claim for deliberate indifference to medical needs.[3]  Defendants filed an Answer (ECF No. 44) to Plaintiff's Amended Complaint on July 13, 2011.  Plaintiff, pro se, filed a Memorandum of Law in Opposition to Defendants' Answer (ECF No. 48) on September 8, 2011.  On October 21, 2011, Defendants filed a Motion for Summary Judgment (ECF No. 52) on Plaintiff's Fourth Amendment excessive force claim only.  Plaintiff then filed a Brief and exhibits in Opposition to Defendants' Motion for Summary Judgment (ECF No. 60).


FACTS

        Unless otherwise indicated, the following facts are undisputed.  On August 18, 2009, at approximately 1:00 a.m., Defendant Officers Myers and Seese were on uniform patrol when they observed Plaintiff fail to stop at a stop sign.  These Defendants pulled Plaintiff over for failing to stop.  (Amended Complaint, ECF No. 42 at Facts ¶ 1 (hereinafter "ECF No. 42 at ¶ _"));  (Defendants' Concise Statement of Material Facts, ECF No. 54 at ¶¶ 1, 2 (hereinafter "ECF No. 54 at ¶ _"));  (Pittsburgh Bureau of Police Investigative Report, ECF No. 55 at 8 (hereinafter "ECF No. 55 at __")).  Plaintiff stopped, but then fled the scene before the Defendant Officers were able to speak with him.  (ECF No. 42 at ¶¶ 1, 2; ECF No. 54 at ¶¶ 3, 4, 5.)  Plaintiff's

---

[1] The court must liberally construe the factual allegations of Plaintiff's Complaint because pro se pleadings, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus,* 551 U.S. 89, 94 (2007) (internal quotation omitted); *Haines v. Kerner,* 404 U.S. 519, 520 (1972).

[2] Although Plaintiff attempts to state a First Amendment retaliation claim, Plaintiff avers no facts to suggest that he was allegedly retaliated against because of his protected speech.

[3] This Court dismissed with prejudice Plaintiff's Eighth Amendment claim at ECF Nos. 38 & 39.  Consequently, the Plaintiff may not include this claim in his Amended Complaint.

passenger, Paul Barone, indicated to Plaintiff that he was in possession of contraband, so Plaintiff drove away in order for Barone to dispose of the contraband (ECF No. 42 at ¶¶ 1, 2; ECF No. 54 at ¶ 5).  In addition, Plaintiff, who was then on probation, drove away because he did not want to violate any of the conditions of his probation.  (ECF No. 42 at ¶ 2; ECF No. 54 at ¶ 5.)  Myers and Seese pursued Plaintiff, but after a very short time the pursuit was terminated. (ECF No. 42 at ¶ 3; ECF No. 54 at ¶¶ 7, 8.)  Defendants claim they terminated their pursuit pursuant to the order of their police sergeant due to Plaintiff's high rate of speed.  (ECF No. 54 at ¶ 8.)  It is undisputed that Defendant Officers Myers and Seese terminated their pursuit; however, Plaintiff does not concede Defendants' explanation for the termination.  After termination of the pursuit, Plaintiff pulled over, exited his vehicle, and Defendant Officer Corey Harcha then came upon Plaintiff.  (ECF No. 42 at ¶¶ 3, 4; ECF No. 54 at ¶¶ 9, 10.)

The following events are disputed by the parties.  Plaintiff alleges that Officer Harcha got out of his patrol vehicle while holding his gun and started shooting at Plaintiff without warning. (ECF No. 42 at ¶ 4.)  Plaintiff further alleges he was forced to get back into his vehicle in order to avoid being shot by Officer Harcha.  (ECF No. 42 at ¶ 5.)  According to Plaintiff, Officer Harcha then placed his arm inside the passenger window of Plaintiff's car and continued firing his gun and shot Plaintiff in the back of his neck.  (ECF No. 42 at ¶ 5.)  At this point Defendant Officers Myers and Seese arrived at the scene.  Plaintiff avers that, fearing for his life, he attempted to drive off, and all three Defendant Officers fired their guns at Plaintiff's car, and Plaintiff was shot in his right shoulder from behind.  (ECF No. 42 at ¶ 6.)  Plaintiff avers that, again fearing for his life, he panicked and drove off to save his life from what he perceived as certain death.  (ECF No. 42 at ¶ 7.)  Plaintiff states that his "run-for-it" ended "when he crashed

into a utility pole while being unconscious.  At this time[,] Pittsburgh police pulled Plaintiff from his vehicle and repeatedly beat on him."  (ECF No. 42 at ¶ 8.)

Defendants contend that when Harcha came upon Plaintiff after the sergeant's termination of Seese and Myers' pursuit, Harcha pulled up next to Plaintiff's parked vehicle. Plaintiff was standing outside of his vehicle.  (ECF No. 54 at ¶ 10.)  Harcha told Plaintiff to halt, but Plaintiff jumped back into the driver's side of his vehicle and turned on the engine.  (ECF No. 54 at ¶ 12a.)  In response, Defendant Harcha drew his firearm and told Plaintiff to turn off his engine and step out of his vehicle.  (ECF No. 54 at ¶ 12b.)  Defendant Harcha further contends that instead of complying, Plaintiff suddenly threw his vehicle into forward gear which caused the front of Plaintiff's vehicle to hit the partially open door of Defendant Harcha's patrol car, trapping Officer Harcha between the two vehicles.  (ECF No. 54 at ¶ 12c.)  Defendant Harcha contends his right hand slid into Plaintiff's open, front passenger-side window, and his hand sustained injury either upon the entry of Plaintiff's vehicle or upon the exit of Plaintiff's vehicle.  (ECF No. 54 at ¶ 12d.)  Officer Harcha fired a single shot while his hand was in Plaintiff's open, front passenger-side window.  (ECF No. 54 at ¶ 12e); (Supplemental Report, ECF No. 60-2 at 1); (Supplemental Report, ECF No. 60-3 at 1).  Defendant Harcha indicated that he discharged his weapon for fear that "he was going to be pinned in between the two vehicles and possibly critically injured."  (Supplemental Report, ECF No. 60-3 at 1).

Defendants further assert that Defendant Officers Myers and Seese arrived on the scene and observed Defendant Officer Harcha yelling for help.  Defendant Harcha was trapped between his patrol vehicle and Plaintiff's vehicle while Plaintiff continued to drive his vehicle forward.  (ECF No. 54 at ¶ 12f.)  In an effort to stop Plaintiff from running over Defendant Harcha, both Defendant Officers Myers and Seese fired at Plaintiff's vehicle.  (ECF No. 54 at ¶¶

12f, 12h.)  Defendant Seese fired 9 shots, and Defendant Myer fired 16 shots.  (Supplemental

Report, ECF No. 60-2 at 1).  Plaintiff fled the scene and Myers and Seese checked on Harcha

before continuing to pursue Plaintiff.  (ECF No. 54 at ¶ 13, 14.)  Harcha did not join the pursuit

because his patrol car door would not close and his hand was injured as a result of the

altercation; consequently, he remained to secure the scene.  Later, Defendant Harcha was

transported to the hospital for treatment of his hand injury.  (ECF No. 54 at ¶ 15.)  Plaintiff's

flight eventually ended when his vehicle struck a telephone pole and stone wall.  (ECF No. 54 at

¶ 16.)  Defendants contend that by the time Defendant Officers Myers and Seese reached

Plaintiff, he had already crashed and was being restrained by other police officers.  (ECF No. 54

at ¶ 17.)

It is undisputed that after the altercation between the three Defendant police officers and

Plaintiff, Plaintiff fled the scene and continued driving until he crashed into the utility pole and

stone wall.  (ECF No. 42 at ¶¶ 7, 8; ECF No. 54 at ¶¶ 13, 16.)  Plaintiff then contends that

Pittsburgh Police Officers pulled Plaintiff from his vehicle and repeatedly beat on him; (ECF No.

42 at ¶ 8) however, Plaintiff does not identity the Pittsburgh Police Officers who allegedly beat

him or name them as defendants in this action.  Plaintiff was then taken to the hospital for the

treatment of a superficial gunshot wound to the neck, and gunshot to the shoulder.  (Allegheny

Correctional Health Services' Medical Status Report of Plaintiff, ECF No. 60-7 at 1.)

Plaintiff was charged with the following:

a.   18 Pa. C.S. § 2701(a)(2) and (c): Aggravated Assault (serious injury to police, transit

officials, firemen, or others);

b.   75 Pa. C.S. § 3733: Fleeing or Attempting to Elude a Police Officer;

    c.   35 P.S. § 780-113(a): Possession with Intent to Deliver a Controlled Substance

        (Heroin);

    d.   18 Pa. C.S. § 2705: Recklessly Endangering Another Person;

    e.   35 P.S. § 780-113(a)(16) and (b): Possession of Controlled Substance, Drugs, Device,

        or Cosmetic (Heroin);

    f.   75 Pa. C.S. § 1543(a): Driving While Operating Privilege is Suspended or Revoked;

    g.   75 Pa. C.S. § 3112: Failure to Obey Traffic Control Signals;

    h.   75 Pa. C.S. § 3308: Driving One-Way Roadway (failure to drive in the designated

        direction;

    i.   75 Pa. C.S. § 3323: Failure to Stop at a Stop Sign;

    j.   75 Pa. C.S. § 3324: Signaling Improperly; and

    k.   75 Pa. C.S. § 3736: Reckless Driving

(Commonwealth of Pennsylvania v. Miller, Criminal Action No. CC200914508 (Charge

Information Sheet) (ECF No. 55 at 14-16).  On August 9, 2011, Plaintiff pled guilty to all of

these charges.  (Commonwealth of Pennsylvania v. Miller, Criminal Action No. CC200914508

(Guilty Plea) (ECF No. 55 at 17-19).

LEGAL STANDARD

       Summary judgment is appropriate if, drawing all inferences in favor of the nonmoving

party, "the pleadings, depositions, answers to interrogatories and admissions on file, together

with the affidavits, if any, show that there is no genuine issue of material fact and the movant is

entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  Summary judgment may be

granted against a party who fails to adduce facts sufficient to establish the existence of any

element essential to that party's case, and for which that party will bear the burden of proof at

trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  The moving party bears the initial

burden of identifying evidence which demonstrates the absence of a genuine issue of material

fact; that is, the movant must show that the evidence of record is insufficient to carry the non-

movant's burden of proof.  *Id*.  Once that burden has been met, the nonmoving party must set

forth "specific facts showing that there is a genuine issue for trial" or the factual record will be

taken as presented by the moving party and judgment will be entered as a matter of law.

*Matsushita Elec. Indus. Corp. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986) (quoting Fed. R.

Civ. P. 56(e)) (emphasis added by *Matsushita* Court).  An issue is genuine only "if the evidence

is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v.

Liberty-Lobby, Inc*., 477 U.S. 242, 248 (1986).  In *Anderson*, the United States Supreme Court

noted the following:

> [A]t the summary judgment stage the judge's function is not
> himself to weigh the evidence and determine the truth of the matter
> but to determine whether there is a genuine issue for trial.  . . .
> [T]here is no issue for trial unless there is sufficient evidence
> favoring the nonmoving party for a jury to return a verdict for that
> party.  If the evidence is merely colorable, or is not significantly
> probative, summary judgment may be granted.

*Id.* at 249-50 (internal citations omitted).

Here, Defendants contend that they are entitled to judgment as a matter of law because

record evidence demonstrates that they are entitled to qualified immunity.  Plaintiff responds that

genuine issues of material fact preclude summary judgment because a reasonable jury could

conclude that Defendants used excessive force and thereby violated his Fourth Amendment

rights.

ANALYSIS

**Section 1983**

Section 1983 of the Civil Rights Act provides as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or any other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983.  To state a claim for relief under this provision, the Plaintiff must demonstrate that the conduct in the complaint was committed by a person or entity acting under color of state law, and that such conduct deprived the Plaintiff of rights, privileges or immunities secured by the Constitution or the laws of the United States.  *Piecknick v. Commonwealth of Pennsylvania*, 36 F.3d 1250, 1255-56 (3d Cir. 1994).  Section 1983 does not create rights; it simply provides a remedy for violations of those rights created by the United States Constitution or federal law. *Kneipp v. Tedder*, 95 F.3d 1199, 1204 (3d Cir. 1996).

**Qualified Immunity**

State officials performing discretionary acts enjoy "qualified immunity" from money damages in § 1983 causes of action when their conduct does not violate "clearly established" statutory or constitutional rights of which a "reasonable person" would have known at the time the incident occurred.  *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  In *Saucier v. Katz*, 533 U.S. 194 (2001), the United States Supreme Court discussed the two-step qualified immunity inquiry.  The Court directed that, in deciding whether a defendant is protected by qualified immunity, a court first must determine whether, "[t]aken in the light most favorable to the party

8

asserting the injury, . . . the facts alleged show the officer's conduct violated a constitutional right." *Id*. at 201.  If the facts do not establish the violation of a constitutional right, no further inquiry concerning qualified immunity is necessary. *Id*.  If the plaintiff's factual allegations do show a violation of his rights, then the court must proceed to determine whether the right was "clearly established," that is, whether the contours of the right were already delineated with sufficient clarity to make a reasonable officer in the defendant's circumstances aware that what he was doing violated the right.[4]  *Id*. at 201-02.  Recently, in *Pearson v. Callahan*, 555 U.S. 223 (2009), the United States Supreme Court concluded that while the two-step sequence identified in *Saucier* "is often appropriate, it should no longer be regarded as mandatory." *Id*. at 236.

In determining whether an officer's conduct violated a constitutional right for purposes of qualified immunity at the summary judgment stage, the United States Supreme Court has instructed that although a court should view the facts and draw reasonable inferences in the light most favorable to the party opposing the motion, a court should not rely on these facts where they are "so utterly discredited by the record that no reasonable jury could [believe them]." *Scott v. Harris*, 550 U.S. 372, 381 (2007).  That is, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Id.*

Fourth Amendment Claim

The Fourth Amendment provides that "[t]he right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures, shall not be

---

[4] Defendants concede that the second prong of the qualified immunity test is satisfied in this case.  (ECF No. 53 at 7 n.3.)

violated, and no Warrants shall issue, but upon probable cause . . . ."  U.S. Const. amend. IV.

This provision has been made applicable to the states through the Fourteenth Amendment.  *Ker*

*v. California*, 374 U.S. 23, 30 (1963).

      The Plaintiff contends that Defendants violated his Fourth Amendment rights when

Defendants allegedly used excessive force in apprehending him.  In order to make out a claim for

excessive force as an unreasonable seizure under the Fourth Amendment, Plaintiff must show

that a seizure occurred and that it was reasonable.  *Abraham v. Raso*, 183 F.3d 279, 288 (3d Cir.

1999) (alleged excessive force in course of arrest is analyzed under Fourth Amendment).  Here,

the parties do not dispute that there was a seizure of Plaintiff.  Consequently, the only issue

before the Court on Defendants' Motion for Summary Judgment is whether the force used to

effect the seizure was objectively reasonable.  Whether the use of force is objectively reasonable

"requires careful attention to the facts and circumstances of each particular case, including the

severity of the crime at issue, and whether he is actively resisting arrest or attempting to evade

arrest by flight."  *Graham v. Connor*, 490 U.S. 386, 396 (1989).  In *Graham*, the United States

Supreme Court cautioned that in applying the objective reasonableness test, "[n]ot every push or

shove, even if it may later seem unnecessary in the peace of a judge's chambers," will be deemed

unreasonable.  Instead, "[t]he calculus of reasonableness must embody allowance for the fact that

'police officers are often forced to make split-second judgments – in circumstances that are

tense, uncertain, and rapidly evolving – about the amount of force that is necessary in a particular

situation.'"  *Id.* at 396-97 (internal quotations omitted).  In addition, the United States Supreme

Court has emphasized that each case alleging excessive force must be evaluated under the

totality of circumstances.  *Id.* at 397.  Finally, "[w]here a police officer has probable cause to

believe that the suspect poses a threat of serious physical harm, either to the officer or to others,

it is not constitutionally unreasonable to prevent escape by using deadly force." *Hill v. Nigro*, 266 Fed. Appx. 219, 221 (3d Cir. 2008) (citing *Tennessee v. Garner*, 471 U.S. 1, 11 (1985)).

Here, Plaintiff's version of the facts concerning Defendants' alleged use of excessive force is "so utterly discredited by the record that no reasonable jury could [believe Plaintiff's version]." *Scott*, 550 U.S. at 381. Consequently, Defendants' Motion for Summary Judgment on Plaintiff's Fourth Amendment excessive force claim must be granted as Defendants are entitled to qualified immunity.

The first material fact in dispute concerns the degree of force used by Defendant Harcha when he first came upon Plaintiff after the pursuit by Myers and Seese was terminated. Plaintiff alleges that Officer Harcha got out of his patrol vehicle while holding his gun and started shooting at Plaintiff without warning. (ECF No. 42 at ¶ 4.) Plaintiff further alleges he was forced to get back into his vehicle in order to avoid being shot by Officer Harcha. (ECF No. 42 at ¶ 5.) According to Plaintiff, Officer Harcha then placed his arm inside the passenger window of Plaintiff's car and continued firing his gun and shot Plaintiff in the back of his neck. (ECF No. 42 at ¶ 5.) Record evidence, however, demonstrates that only one round was fired from Harcha's gun. That is, in response to Defendants' Motion for Summary Judgment, *Plaintiff* comes forward with a document entitled "Supplemental Report" which details the number of bullets discharged from each Defendant Officer's firearm. (ECF No. 60-2.) The Supplemental Report indicates that Defendant Harcha fired only one shot from his duty weapon. (ECF No. 60-2 at 1.) Consequently, no reasonable jury could believe that Harcha initially approached Plaintiff repeatedly firing his weapon, and that he continued to repeatedly fire his weapon after he placed his arm inside Plaintiff's passenger window.

Next, Plaintiff alleges that Defendant Officers Myers and Seese arrived at the scene, and

fearing for his life, Plaintiff attempted to drive off, and all three Defendant Officers fired their

guns at Plaintiff's car; Plaintiff alleges he was shot in his right shoulder from behind.  (ECF No.

42 at ¶ 6.)  Record evidence, however, demonstrates that Defendant Harcha was trapped between

the open door of his patrol car and Plaintiff's car, and that Plaintiff was attempting to flee the

scene in his vehicle, posing a deadly threat to Officer Harcha.  First, Plaintiff concedes that he

pled guilty to every criminal charge relating to the facts in issue.  (ECF No. 60 at 2.)  Plaintiff's

guilty plea to all charges (ECF No. 55 at 17-18) renders Plaintiff's version of the facts incredible;

that is, "under Pennsylvania law, a guilty plea constitutes an admission to all of the facts alleged

in the indictment." *M.B. v. City of Philadelphia*, 128 Fed. Appx. 217, 227 (3d Cir. 2005) (citing

*Commonwealth Dep't of Transp. v. Mitchell*, 535 A.2d 581, 585 (Pa. 1987)).  For instance, the

Information at Criminal Case No. 200914508 (ECF No. 55 at 14-16) in the Court of Common

Pleas of Allegheny County, Pennsylvania, indicates that Plaintiff "attempted to cause or

intentionally, knowingly or recklessly caused serious bodily injury to Corey Harcha a[] Police

Officer, while in the performance of duty, in violation of Section 2702 (a) (2) and (c) of the

Pennsylvania Crimes Code."  Further, Plaintiff admitted that he "recklessly engaged in conduct

which placed or may have place Police Officer Corey Harcha in danger of death or serious

bodily injury, in violation of Section 2705 of the Pennsylvania Crimes Code."  Plaintiff likewise

admitted that he "recklessly engaged in conduct which placed or may have placed Paul Barone

[Plaintiff's passenger] in danger of death or serious bodily injury," and that Plaintiff "drove his

vehicle in willful or wanton disregard for the safety of persons or property, in violation of

Section 3736 of the Pennsylvania Vehicle Code."  Further, Plaintiff admitted that he "drove a

motor vehicle and willfully failed or refused to bring his vehicle to a stop, or otherwise fled or

attempted to elude a pursuing police officer . . . and/or [] endangered a law enforcement officer or member of the general public due to the [Plaintiff] engaging in a high-speed chase." (ECF No. 55 at 14-16.)[5]  Consequently, Plaintiff's own guilty pleas establish that Plaintiff posed a threat of serious bodily injury to Defendant Harcha, his passenger Paul Barone, and others with whom he came into contact during the high speed chase.  His guilty pleas further establish that he refused to bring his vehicle to a stop after having been so instructed by Defendant Officers.

In addition, Officers Seese and Myers submitted affidavits indicating that at the time they arrived on scene, they saw that Plaintiff had pinned Harcha between Plaintiff's vehicle and Harcha's vehicle and Officer Harcha was yelling for help; they fired on Plaintiff's vehicle in an attempt to stop Plaintiff from running over Harcha.  (ECF No. 55 at 22, 25.)

Photographs taken of Plaintiff's Impounded Vehicle and Officer Harcha's Patrol Car show that Plaintiff's car is smashed along the front passenger fender; scrapes of a lighter color appear along the smashed in fender; Harcha's patrol car is white and the driver's side patrol door is damaged.  There is also a dent in the driver's side rear bumper of the patrol car.  (ECF No. 55 at 30-32.)  These photographs do not support Plaintiff's alleged facts that he simply drove away when confronted by Defendants.  Instead, the photographs support Defendants' contentions that Plaintiff came dangerously close to Harcha when he was standing outside of his patrol car with the door open.  Plaintiff comes forward with absolutely no evidence suggesting otherwise.  Photographs of Plaintiff's car also reflect serious damage to the front of his vehicle where he crashed into a utility pole and stone wall.  (ECF No. 55 at 30-31.)  The outline of the utility vehicle is clearly visible within the hood of Plaintiff's car, further supporting the fact that Plaintiff was driving at a dangerous rate of speed.

---

[5] Plaintiff also pled guilty to several other offenses including possession with intent to deliver heroine, and driving without a license.

Defendants further submit Harcha's worker's compensation award establishing that he suffered injury to his right middle and ring finger in the line of duty and that the injuries were sustained because his fingers were "caught in window."[6]  ("Notice of Compensation Payable," ECF No. 55 at 20.)  This document supports Harcha's contention that he was in fear for his own safety when his hand was caught in Plaintiff's passenger side window as Plaintiff was attempting to drive away.

Consequently, record evidence demonstrates that Plaintiff's version of the facts is "blatantly contradicted by the record, so that no reasonable jury could believe [Plaintiff's version]."  *See Scott*, 550 U.S. at 381.  Consequently, the Court will not adopt Plaintiff's facts that are contradicted by the record for purposes of ruling on Defendants' Motion for Summary Judgment.  Instead, record evidence demonstrates that it was objectively reasonable for Officers Harcha, Seese, and Myers to believe, in light of the totality of circumstances, that the degree of force used was necessary to prevent Plaintiff's escape.  Further, record evidence demonstrates that it was objectively reasonable for Defendants to believe that Plaintiff posed a significant threat of death or serious injury to Officer Harcha and others, and that the degree of force used by these officers was objectively reasonable in light of this threat of death or serious bodily injury.  Finally, it was objectively reasonable for Defendants Seese and Myers, when encountering Defendant Harcha trapped between his patrol car and Plaintiff's car with his hand caught in Plaintiff's passenger side window, to conclude that Harcha was in danger of being run over by Plaintiff as he was attempting to flee the scene, and to use deadly force to prevent this harm and apprehend Plaintiff.

---

[6] In his response to Defendants' Motion for Summary Judgment, Plaintiff notes that the date of the injury indicated in the compensation award is the day before the events in issue.  Defendants note, however, that the discrepancy between the date of reported injury and the date of Plaintiff's arrest is due to the fact that Harcha would have begun his patrol shift the evening of August 17, 2009, although Harcha did not sustain his injury until an hour after midnight.  (ECF No. 54 at 6 n.1.)

Therefore, no reasonable jury could conclude that Defendants violated Plaintiff's Fourth Amendment right against excessive force and Defendants are entitled to qualified immunity as to this claim.


CONCLUSION

For the reasons discussed above, Defendants are entitled to qualified immunity on Plaintiff's Fourth Amendment excessive force claim.  Therefore, Defendants' Motion for Summary Judgment on this claim will be granted.  An appropriate Order will follow.

BY THE COURT:




s/  Lisa Pupo Lenihan
LISA PUPO LENIHAN
Chief United States Magistrate Judge


Dated: May 14, 2012


cc:  All counsel of record
     Via Electronic filing

     SHAWN MILLER
     KG6150
     SCI Smithfield
     PO Box 999
     1120 Pike Street
     Huntingdon, PA 16652
     PRO SE